Jeffrey J. Hunt, SBN 5855
David C. Reymann, SBN 8495
PARR WADDOUPS BROWN GEE & LOVELESS
185 S. State Street, Suite 1300
Salt Lake City, UT  84111
Telephone:     (801) 532-7840
Facsimile:      (801) 532-7750
Email: jjh@pwlaw.com
          dcr@pwlaw.com

James W. Shannon, Jr. (admitted in California, filing *pro hac vice*)
Amanda L. Morgan (admitted in California, filing *pro hac vice*)
Lauren E. Geissler (admitted in California, filing *pro hac vice*)
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA  94104
Telephone:     (415) 439-1400
Facsimile:      (415) 439-1500
Email: jshannon@kirkland.com
          morganA@kirkland.com
          lgeissler@kirkland.com

*Attorneys for Plaintiff*
NEWAYS, INC.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NEWAYS, INC., a Utah corporation,<br><br>                 Plaintiff,<br><br>v.<br><br>THOMAS ELWIN MOWER, SR., an individual, THOMAS MOWER, JR., an individual, DARICK MOWER, an individual, SISEL INTERNATIONAL, LLC, a Utah limited liability company, and SUPRANATURALS LLC, a Utah limited liability company, KOJI YAMAMOTO, an individual, TORU EGASHIRA, an individual, FUMIKO MATSUMOTO, an individual,<br><br>                 Defendants. | **MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST JAPANESE DISTRIBUTOR DEFENDANTS**<br><br>**(Redacted)**<br><br>CASE NO. 2:07-cv-339<br><br>Judge:  J. Thomas Greene |

220197.1

Plaintiff, Neways, Inc. ("Neways"), by and through undersigned counsel, hereby submits this memorandum in support of Neways' motion for temporary restraining order and preliminary injunction (this "Motion").

## **<u>INTRODUCTION</u>**

Neways brought this Motion to rectify the irreparable harm it has suffered and continues to suffer as a result of the wrongful conduct of Defendants Koji Yamamoto ("Yamamoto"), Toru Egashira ("Egashira"), and Fumiko Matsumoto ("Matsumoto") (collectively, the "Japanese Distributor Defendants").  Neways is a multi-level marketing company in the business of selling nutritional supplements and personal care products through a network of independent distributors.  This network of independent distributors is an essential component of Neways' business operations.  Due to the fact that its distributors are such a valued asset, Neways has taken and continues to take steps to ensure that its competitors do not gain access to confidential and proprietary information in its possession respecting the identities, downlines, hierarchies, sales volume and performances of its distributors.

The Japanese Distributor Defendants are high-ranking and prominent Neways distributors who have had close contact with other key Japanese distributors during the course of their association with Neways.  They also had access to and learned of confidential information respecting the downline networks of Neways distributors.  The Japanese Distributor Defendants are contractually obligated to refrain from cross-recruiting distributors they have come into contact with during their association with Neways, including those within their own downlines on behalf of other multi-level marketing companies.  The Japanese Distributor Defendants are

also contractually obligated to refrain from using or disclosing confidential information belonging to Neways, including the identities of Neways' distributors and all other information they learned respecting Neways' network of distributors during their association with Neways.

Neways has learned that the Japanese Distributor Defendants have become distributors for Sisel International ("Sisel"), a direct competitor of Neways. The Japanese Distributor Defendants are taking actions in violation of their contractual obligations. Specifically, the Japanese Distributor Defendants have contacted several persons known by them to be Neways distributors, including some key high-ranking distributors within their own downlines, and induced them to join Sisel. These contacts were made using confidential information belonging to Neways. Neways has reason to believe that the Japanese Distributor Defendants will continue to contact and solicit key Japanese Neways' distributors in violation of their contractual obligations unless immediately enjoined.

Therefore, Neways requests that this Court enter a temporary restraining order and preliminary injunction to prevent the Japanese Distributor Defendants from contacting Neways' distributors for the purpose of providing information about or inviting them to join Sisel or any other competing enterprise for a period of one year, using or revealing proprietary and confidential information belonging to Neways, and from otherwise violating their contractual obligations to Neways.

## STATEMENT OF MATERIAL FACTS

1.      Neways is a large international multi-level marketing company, which sells and distributes, through independent distributors, high quality personal care and nutritional products. (Affidavit of Christopher S. Crump in Support of Motion for Temporary Restraining Order ("Crump Aff."), ¶ 3.)

2.      Incorporated in 1992, Neways now operates in approximately 23 countries, and employs more than 500 individuals in Utah, and over 1,200 people around the world.  Neways currently has an international network of approximately 500,000 independent distributors. (Crump Aff. ¶ 4.)

3.      An essential component of Neways' business model are the Independent Neways Distributors ("IND") through which Neways sells its products.  Generally, INDs operate from their own homes, whereby they each acquire Neways' products at wholesale prices for their own use, and sell products through local businesses and individuals.  Many work the business to cover their own personal product costs, but others make excellent part-time and full-time incomes by aggressively working Neways' business opportunities.  (Crump Aff. ¶ 5.)

4.      Neways' highest-ranking INDs, who have large downlines of distributors, are crucial to Neways' success.  It is through these highest-ranking and successful distributors and their downline networks that Neways sells the bulk of its products, as well as recruits additional INDs to sell products worldwide.  (Crump Aff. ¶ 6.)

5.      Neways considers all information respecting its network of INDs to be confidential.  For that reasons, it requires all INDs to enter into certain contractual obligations that prohibit the disclosure of confidential information relating to Neways' network of INDs and prohibit Neways INDs from soliciting Neways' distributors for any non-Neways business purpose.  (Crump Aff. ¶ 7.)

6.      On November 15, 1996, Yamamoto submitted an Independent Distributor Application and Agreement ("Distributor Agreement") to Neways, a true and correct copy of which is attached as Exhibit A to the Crump Affidavit.  (Crump Aff. ¶ 8 and Exhibit A.)

7.     On August 20, 1997, Egashira submitted a Distributor Agreement to Neways, a true and correct copy of which (together with a translation) is attached as Exhibit B to the Crump Affidavit.

8.     On August 26, 1997, Matsumoto submitted an identical Distributor Agreement to Neways.  On Matsumoto's Distributor Agreement, Egashira is identified as having sponsored Matsumoto in becoming a Neways distributor.  A true and correct copy of Matsumoto's Distributor Agreement (together with a translation) is attached as Exhibit C to the Crump Affidavit.  (Crump Aff. ¶ 10, Exhibit C.)

9.     By executing the Distributor Agreements, the Japanese Distributor Defendants expressly agreed, as a condition of becoming Neways distributors, that "Distributor and customer lists and names are owned by [Neways] and may never be used for any commercial purpose without prior written consent of [Neways]."  The Japanese Distributor Defendants also expressly agreed that Utah courts have exclusive jurisdiction over any dispute relating to the Distributor Agreements.  (Crump Aff. ¶ 11 and Exhibits A, B, and C.)

10.     The Japanese Distributor Defendants also expressly agreed to abide by Neways' Statement of Policies and Procedures (a copy of which are available at www.neways.com, and which are attached to the Crump Aff. as Exhibit D), which contain the following provisions:

> 4.9.1-Nonsolicitation
>
> 4.9.1.1-Distributors are free to participate in other multi-level or network marketing business ventures or marketing opportunities (collectively "network marketing").  However, during the term of this Agreement, Distributors shall not recruit other Neways Distributors or Customers for any other network marketing business.

4.9.1.2-For one year following termination or cancellation of Distributor's Neways Distributor Agreement, regardless of the reason for termination or cancellation, he or she shall not recruit any Neways Distributor who is on his/her current or past genealogy report(s) or with whom the distributor became acquainted by virtue of their mutual participation as Neways Distributors.

\*\*\*

4.9.1.4. - The term "recruit" means actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly, through a third party, or indirectly (including, but not limited to, the use of a website), another Neways Distributor or customer to enroll or participate in another network marketing opportunity. This conduct constitutes recruiting even if the Distributor's actions are in response to an inquiry made by another Distributor or customer.

4.9.1.5 - Distributors stipulate that network marketing is conducted through networks of individuals that are dispersed across the globe, and that network marketers make regular use of the internet and telephones to communicate with other network marketers. Therefore, any attempt to limit the geographic scope of the nonsolicitation provisions set forth in paragraphs one and two would render the provisions ineffective. Therefore, Distributor agrees that the nonsolicitation provisions in subsections 4.91.1. and 4.9.1.2 shall apply in all countries in which Neways conducts business. Distributor agrees that the geographic scope applicable to these provisions is reasonable, and further waives any claim or defense that the nonsolicitation provisions are void or voidable based on the breadth of their geographic scope.

(Crump Aff. ¶ 12, Exhibit D.)

11.     Yamamoto has been a very successful Neways distributor, and has become one of

Neways' key leaders in Japan.  (Crump Aff. ¶ 13.)

12.     Recently, Neways began to receive reports from its distributors in Japan that

Yamamoto had become a distributor for Sisel International, Inc. ("Sisel"), a multi-level

marketing company that sells products similar to those of Neways, and that Yamamoto was

actively recruiting Japanese Neways distributors to join him at Sisel in violation of his contractual obligations.  (Crump Aff. ¶ 14.)

13.     Neways has learned that Yamamoto is promoting himself as being the founding Japanese distributor for Sisel.  (Crump Aff. ¶ 15.)

14.     Sisel is an entity that, upon information and belief, is owned and was created by a former principal of Neways and is currently being managed by former Neways' officers and directors, among others.  (Crump Aff. ¶ 16.)

15.     Yamamoto has personally contacted key Neways distributors in Japan, including **[names redacted]** to solicit and recruit them to become distributors for Sisel.  (Crump Aff. ¶ 17.)

16.     Neways has learned that Yamamoto has, at the instruction of Sisel, encouraged Neways distributors in his downline, and with whom he has otherwise become acquainted through his participation as a Neways distributor, to join Sisel while maintaining their Neways distributorship, or to sign up for Sisel distributorships using the name of a family member or other person in order to conceal such inappropriate activities from Neways. (Crump Aff. ¶ 18.)

17.     Neways has information and believes that Yamamoto has been involved in presenting seminars for Sisel in various Japanese cities over the last couple of months.  (Crump Aff. ¶ 19.)

18.     Neways has information and believes that Yamamoto has contacted several other persons who he became acquainted with through Neways and are known to be Neways distributors and invited them to become distributors for Sisel.  (Crump Aff. ¶ 20.)

19.     Neways is informed and believes that Yamamoto is actively recruiting Neways distributors to join him at Sisel in violation of his contractual obligations.  (Crump Aff. ¶ 21.)

20.     Matsumoto and Egashira are also among Neways highest-ranked distributors. (Crump Aff. ¶ 22.)

21.     Neways recently learned that Matsumoto and Egashira have become distributors for Sisel and have been actively recruiting Neways distributors in Japan on behalf of Sisel.  For example:

(a)     Matsumoto contacted **[name redacted]** a Neways distributor in Japan, on December 8, 2006 and invited him to accompany him to the United States to learn about Sisel;

(b)     Matsumoto called **[name redacted]** a Neways distributor on December 31, 2006 and discussed opportunities with SISEL.  Matsumoto called **[name redacted]** a second time on February 14, 2007 and invited her to become a distributor for Sisel;

(c)     Matsumoto also sent emails to **[name redacted]** on February 26, 2007 and March 19, 2007 encouraging him to become a distributor for Sisel;

(d)     Matsumoto and Egashira conducted meetings for Sisel at Egashira's office in Nagano, Japan on January 11 and 12, 2007.  These meetings were attended by Neways distributors including **[names redacted]**;

(e)     Matsumoto met personally with Neways distributor **[name redacted]** on or about November 20, 2006 and invited him to become a distributor for Sisel;

(f)     Matsumoto called Neways distributor **[name redacted]** on January 14, 2007 and suggested that he watch a DVD about opportunities with Sisel at Egashira's home; and

      (g)     Matsumoto and Egashira held meetings at Egashira's home on January 12 and 13, 2007 at which they spoke to various Neways distributors, including **[names redacted]** and invited th**e**m to become distributors for Sisel.  During that meeting, Egashira and Matsumoto encouraged Neways distributors to hide their involvement with Sisel from Neways.

(Crump Aff. ¶ 23.)

22.     Neways is informed and believes that Matsumoto and Egashira are continuing to actively recruit a1nd solicit Neways distributors in Japan to join Sisel in violation of their Distributor Agreements.  (Crump Aff. ¶ 24.)

## <u>ARGUMENT</u>

## I.    NEWAYS IS ENTITLED TO INJUNCTIVE RELIEF AGAINST THE JAPANESE DISTRIBUTOR DEFENDANTS.

Neways is entitled to a temporary restraining order ("TRO") and preliminary injunction to prevent irreparable harm that resulting from the Japanese Distributor Defendants' breaches of their contractual obligations to refrain from cross-recruiting and soliciting Neways distributors and to maintain the confidentiality of Neways' propriety information.  A moving party must "establish four elements as the basis for issuance of a TRO or preliminary injunction: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs any damage to the opposing party; (3) the injunction, if issued, will not be adverse to the public interest; and (4) a substantial likelihood exists that the moving party will prevail on the merits."  *Bauchman By and Through Bauchman v. West High School*, 900 F.Supp. 248, 250 (D.Utah 1995).  Here, each of these elements is met.  Neways is

substantially likely to prevail in its action against the Japanese Distributor Defendants, will suffer irreparable harm without an injunction, the balance of harms favors Neways, and the proposed injunction is not against the public interest.  Therefore, this Motion should be granted.

### A.    This Motion Should Be Granted Because Neways Is Likely to Prevail on the Merits of Its Action Against the Japanese Distributor Defendants.

Neways is likely to prevail on its claims the Japanese Distributor Defendants.  The Distributor Agreements executed by the Japanese Distributor Defendants are valid and binding contracts.  Under the Agreements, the Japanese Distributor Defendants are obligated to maintain the confidentiality of Neways' proprietary information and to refrain from soliciting Neways distributors during their association with Neways and for one year after the termination of their Neways distributorships.  The Japanese Distributor Defendants voluntarily acknowledged in the Distributor Agreement that the names of Neways' distributors constitutes proprietary information belonging to Neways.  (Distributor Agreements.)  The Distributor Agreements and Neways' Policies and Procedures clearly obligate the Japanese Distributor Defendants to maintain the confidentiality of and refrain from using confidential information acquired during the course of his association with Neways.

The Japanese Distributor Defendants violated the Distributor Agreement and Neways' Policies and Procedures by contacting Neways distributors, including those within their own downlines, and inviting them to become distributors for Sisel, a direct competitor of Neways. Specifically, Yamamoto is known by Neways to have contacted persons, including **[names redacted]** and recruited them to become distributors for Sisel.  Similarly, Matsumoto contacted [names redacted].  Egashira held meetings at his home and office to recruit Neways distributors to join Sisel.  These actions also constitute misuse of Neways' confidential information

respecting its distributor network in violation of the Japanese Distributor Defendants' contractual obligations.

Neways is also likely to prevail against the Japanese Distributor Defendants on its claim for interference with existing and prospective economic relations.  During their association with Neways, the Japanese Distributor Defendants directly associated and became acquainted with numerous Neways distributors and had access to valuable information respecting the identities, downlines, and performances of those distributors.  The Japanese Distributor Defendants, as key Neways distributors in Japan, are aware of the importance of those distributors to Neways' business.  The Japanese Distributor Defendants are also aware that all Neways distributors are contractually obligated to maintain the confidentiality of, and refrain from using, proprietary information respecting Neways' distributor network that they obtained from Neways.  Despite that, the Japanese Distributor Defendants have directly solicited persons known by them to be Neways distributors and encouraged them to cease their association with Neways to join Sisel. More importantly, the Japanese Distributor Defendants have encouraged Neways distributors to actively recruit other Neways distributors to join Sisel, and thereby encouraged Neways distributors to violate their agreements with Neways.

Given the fact that the Japanese Distributor Defendants acquired confidential information respecting Neways' distributor Network from Neways, and are now attempting to use that information to further their Sisel distributorships, Neways is also likely to prevail against the Japanese Distributor Defendants on its claim for misappropriation of trade secrets.  A trade secret consists of information that:

> (a) derives independent economic value, actual or potential, from
> not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value
from its disclosure or use; and (b) is the subject of efforts that are
reasonable under the circumstances to maintain its secrecy.

Utah Code Ann. § 13-24-2(4).  The Confidential Information in possession of the Japanese

Distributor Defendants — including distributor names, distributor genealogy information,

telephone and facsimile numbers — qualifies as trade secrets.  *See*, *e.g.*, *Envirotech Corp. v.*

*Callahan*, 872 P.2d 487, 494 (Utah Ct. App. 1994) (defining trade secret).  Similarly, a Neways

distributors' buying habits and volume of purchases, not to mention the type of products being

purchased, also qualifies as trade secrets.  Such information has actual and potential economic

value to Neways (and also to its competitors) and is not readily ascertainable by persons outside

Neways by proper means.  Neways has taken reasonable steps to protect its secrecy by, among

other things, requiring distributors to enter into covenants to protect and guard against its

disclosure.

**B.**      **Neways Has Suffered and Will Continue to Suffer Irreparable Harm if the
Japanese Distributor Defendants Are Not Restrained from Misusing Neways'
Confidential Information.**

If this Motion is not granted, Neways will suffer irreparable harm because the Japanese

Distributor Defendants would be free to continue to cherry-pick Neways' top distributors and

encourage them to become distributors for Sisel, a direct competitor of Neways, despite their

contractual obligations to refrain from such solicitation.  Such activities threaten Neways'

network of distributors, as well as Neways' reputation, goodwill, and business relationships.  A

company's demonstration that in the absence of an injunction it will suffer loss of customers,

goodwill, or threats to its viability is a sufficient showing of irreparable harm to justify a

temporary restraining order or preliminary injunction.  See *Salt Lake Minerals & Chemicals*

*Corp. v. Marsh*, 596 F.Supp. 548,  557 (D. Utah 1984); *Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 685 F.Supp. 1172, 1181 (D. Kan. 1988).

Misuse of customer and vendor data and similar proprietary information is a classic example of irreparable harm that warrants an injunction.  *Am. Express Fin. Advisors v. Scott*, 955 F. Supp. 688, 693 (D. Tex. 1996) ("In a situation where trade secrets and goodwill are involved, the threat is significant that the harm experienced by the misappropriation or misuse of trade secrets will be irreparable . . . and damages are impossible to calculate.").  Similarly, irreparable harm is presumed where a trade secret has been misappropriated because, "'[a] trade secret once lost is, of course, lost forever' and, as a result, such a loss 'cannot be measured in money damages.'"[1] *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F.Supp. 547, 567 (E.D.N.Y. 1995) (citing *FMC Corp. v. Taiwan Tainan Giant Indus. Co.*, 730 F.2d 61, 63 (2d Cir. 1984); *see also PepsiCo, Inc. v. Redmond, No. 94C6838*, 1995 U.S. Dist. Lexis 19437, at *80 (N.D. 111. Dec. 15, 1994), aff'd, 54 F. 3d 1262 (7th Cir. 1995) ("In cases such as this, involving threats to trade secrets and confidential information, courts readily presume irreparable injury from a showing that the protectable interest at stake is imperiled by the defendant's conduct."); *Anacomp, Inc. v. Shell Knob Servs., Inc.*, 1994 WL 9681, at *5 (S.D.N.Y. 1994) ("the loss of a trade secret is not measurable in terms of money damages"); *Computer Assocs. Int'l, Inc. v. Bryan*, 784 F.Supp. 982, 986 (E.D.N.Y. 1992) (for purposes of motion for preliminary injunction, loss of trade secrets is not measurable in terms of money damages and is thus considered irreparable harm).

---

[1]    The Japanese Distributors contractually acknowledge that Neways will suffer irreparable harm if the Distributor Agreements are breached.  (Distributor Agreements.)

Actions taken by the Japanese Distributor Defendants in violation of the Distributor Agreements poses a similarly substantial threat to Neways.  The Japanese Distributor Defendants, as high-ranking Neways distributors, obtained substantial knowledge of Neways' distributor network in Japan.  Due to the valuable nature of the identities of Neways' valued distributors, particularly those of its higher ranked distributors, Neways takes steps to insure that such information is maintained as confidential.  The Japanese Distributor Defendants acknowledged in the Distributor Agreements that the identities of Neways distributors and related information is confidential.  (Distributor Agreements, ¶ 10.)  When misuse or disclosure of confidential or proprietary information is threatened, irreparable harm to a company can be assumed.  *PHP Healthcare Corp. v. EMSA Limited Partnership*, 14 F.3d 941 (4th Cir. 1993); *Modern Controls, Inc. v. Andreadakis*, 578 F.2d 1264, 1269-70 (8th Cir. 1978).  Hence, Neways' survival depends on the success of its independent distributors.  As such, the Japanese Distributor Defendants' efforts to contact high-level Neways distributors and recruit them as distributors for one of Neways' competitors poses a substantial threat to Neways' future viability.  There is no question that the Japanese Distributor Defendants are in possession of confidential information and that they have made efforts to harm Neways' business.  Because Neways would suffer irreparable harm in the absence of an injunction, this Motion should be granted.

>    **C.      The Balance of Harm Weighs in Favor of Granting the Temporary Restraining Order and Preliminary Injunction.**

This Motion should be granted because the balance of harm weighs in favor of granting an injunction to prevent harm to Neways.  The harm that Neways will suffer in the absence of an injunction is incalculable.  The Japanese Distributor Defendants, on the other hand, would not be

harmed in the least by the proposed injunction.  Indeed, they voluntarily relinquished any and all rights they may have had that conflict with the proposed injunction.  When, as here, a party has no right to take the actions from which he is being restrained, the balance of harm clearly favors the party seeking injunctive relief.  *See Corporation of President of Church of Jesus Christ of Latter-Day Saints v. Wallace*, 573 P.2d 1285, 1287 (Utah 1978) (holding that "the defendants, if they are restrained, will suffer no damage for the reason they have no rights under any conceivable stretch of the imagination" to perform the activities from which they are being restrained).  Moreover, the proposed injunction would not prevent the Japanese Distributor Defendants from participating as Sisel distributors, but only from seeking to solicit Neways distributors in violation of their contractual obligations.  Simply put, the requested injunction permits the Japanese Distributors to compete with Neways, but requires that they do so fairly.  Thus, the balance of harms favors Neways and this Motion should be granted.

> **D.   This Motion Should Be Granted Because the Requested Injunction Is Not Contrary to the Public Interest.**

The proposed injunction is not contrary to the public interest and should therefore be granted.  There is a clear public interest in preserving confidential information and enforcing written agreements.  *See Fireworks Spectacular, Inc. v. Piedmont Display Fireworks, Inc.*, 86 F.Supp. 1102, 1107–09 (D. Kan. 2002) ("The public has an interest in protecting a company's trade secrets and preventing unfair competition."); *Utah Code Ann.* § 13-24-1 et seq. (Utah Uniform Trade Secrets Act).  If there is any potential harm to the public in this matter, it is harm that will result from the *absence* of the requested relief.  *See Tri-State Generation v. Shoshone River Power Inc.*, 805 F.2d 351, 358 (10th Cir. 1986) (holding public interest favored temporary restraining order where "it would be easier to correct a mistake in favor of [plaintiff] in issuing

an injunction that it would be to correct a mistake in favor of [defendant] by not issuing it").

Here, the public would not be harmed by the proposed injunction and the proposed injunction

promotes the public interest in protection of trade secrets and the enforcement of written

agreements.  Thus, this Motion should be granted.

**II.      THE PROPOSED INJUNCTION SHOULD BE GRANTED WITHOUT BOND.**

No bond should be required in connection with the proposed injunction.  Neways'

Policies and Procedures specifically state Neways is entitled to injunctive relief in the event of a

breach.  (Neways' Statement of Policies and Procedures, ¶ 4.9.1.6.)  Pursuant to this provision, the

Japanese Distributor Defendants have admitted Neways' right to an injunction and therefore

expressly waived his right to any and all damages that would be paid using a bond.  Because the

Japanese Distributor Defendants have waived any and all rights they may have had to monetary

damages if the injunction is found to have been wrongfully granted, no bond should be required.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Motion should be granted.

DATED this 23rd day of May 2007.


/s/ Jeffrey J. Hunt
Jeffrey J. Hunt, Esq.
PARR WADDOUPS BROWN GEE & LOVELESS

and

James W. Shannon Jr., Esq.
Amanda Morgan, Esq.
Lauren Geissler, Esq.
KIRKLAND & ELLIS LLP

Attorneys for Plaintiff, Neways, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 23rd day of May 2007, a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST JAPANESE DISTRIBUTOR DEFENDANTS** was served via hand-delivery on the following:

> Douglas B. Thayer
> HILL JOHNSON & SCHMUTZ
> RiverView Plaza, Suite 300
> 4844 North 300 West
> Provo, Utah 84604-5663

/s/ Jeffrey J. Hunt
Jeffrey J. Hunt