IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

* * * * * * * * *

| | | |
|---|---|---|
| NEWAYS INC., | ) | Civil No. 2:07-CV-0339 BSJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION AND** |
| vs. | ) | **ORDER** |
| | ) | |
| THOMAS ELWIN MOWER, SR., et al., | ) | |

```
┌─────────────────────────────────────┐
│            FILED                     │
│  CLERK, U.S. DISTRICT COURT          │
│  February 11, 2008 (11:01am)         │
│       DISTRICT OF UTAH               │
└─────────────────────────────────────┘
```

Defendants.

* * * * * * * * *

On January 9, 10, 11, 14, 15, 16, 17, and 18, 2008, this matter came on for hearing on

Neways' Amended Motion for Preliminary Injunction (dkt. no. 183), which was filed against

defendants Koji Yamamoto ("Yamamoto"), Yugengaisha Yuuai Corporation ("Yugengaisha"),

Toru Egashira ("Egashira"), Fumiko Matsumoto ("Matsumoto"), Kaoru Kitagawa ("Kitagawa"),

and Chiharu Hayasi ("Hayasi") (collectively the "Distributor Defendants"), and against

defendant Sisel International, LLC ("Sisel").[1]

Jeffrey J. Hunt, D. Craig Parry, David C. Reymann, and James W. Shannon appeared on

behalf of plaintiff Neways Inc. ("Neways").  Jason R. Hull, R. Stephen Marshall, Erik A. Olson,

Ryan Pahnke and Jessica G. Peterson appeared on behalf of the Distributor Defendants and Sisel.

Also present during the hearing were Christopher Crump, General Counsel for Neways, and

Philip Hadfield, General Counsel for Sisel.  Mark James was also present during portions of the

hearing and appeared on behalf of certain of the individual witnesses that Neways called to

---

[1]While Neways' Amended Motion for Preliminary Injunction was also filed against Mayuri Yamashita, the court dismissed her from this matter during the Pretrial Conference on December 19, 2007.  (Minute Entry, dated December 19, 2007 (dkt. no. 295).)

testify.

During the eight-day hearing, the parties proffered testimony from several witnesses and the court received into evidence numerous exhibits.  At the close of the hearing, the court took the matter under advisement.  The court has carefully considered the evidence proffered during the hearing, the legal arguments of counsel, the parties' written submissions, and the relevant law and facts.  Now being fully advised, the court enters the following Memorandum Decision and Order.

## I.    Background

Plaintiff Neways is an international multi-level marketing company based in Springville, Utah.  Neways is in the business of selling a variety of nutritional, personal care and household products through a network of approximately 500,000 independent distributors.  According to Christopher Crump, Vice-President and General Counsel for Neways, ninety-nine percent of Neways' revenue comes from distributor sales.  While Neways has distributors in numerous markets around the world, Neways has over 350,000 active distributors in Japan and approximately eighty-five percent of Neways' market is in Japan.

Neways was founded by defendant Thomas E. Mower, Sr., ("Thomas Mower") and his former wife, Dee Mower, in or around 1992.  Thomas Mower and Dee Mower, either individually or through companies they controlled, each owned fifty percent of the capital stock of LTM Enterprises, Inc. ("LTM"), a Nevada corporation.  LTM owned 100% of the capital stock of Neways.

Thomas Mower and Dee Mower divorced in or around July of 2000.  Their divorce proceedings remained unresolved for several years due to a disagreement regarding the

2

distribution of their marital assets.  In the Spring of 2006, the court presiding over the Mowers'

divorce proceedings ordered the Mowers to sell LTM through a modified auction process

conducted through investment bankers.  The sale was to close by November 9, 2006.  On

November 8, 2006, the auction process was completed when S. aR. L., a Netherlands company

owned by Golden Gate Capital (collectively "GGC"), purchased the Mowers' capital stock in

LTM – and in doing so, all of the stock of Neways.  At the time of the sale, GGC did not

purchase a separate covenant not to compete that was offered by Thomas Mower.

Defendant Sisel is a Utah limited liability company headquartered in Salem, Utah.  Like

Neways, Sisel was founded by Thomas Mower.  Thomas Mower caused the organization of Sisel

in or around April of 2005.  Like Neways, Sisel is an international multi-level marketing

company that sells nutritional and personal care products through a network of distributors,

primarily in Japan.  Virtually all of Sisel's marketing is done through its distributors, and

according to Sisel, its relationship with each of its distributors is crucial to the success of its

marketing program.

Prior to the sale of Neways in November of 2006, the Distributor Defendants were all

distributors for Neways.

The individual Distributor Defendants all reside in and are citizens of Japan.

Yugengaisha, a Japanese limited liability corporation based in Tokyo, is owned and controlled

by Yamamoto.  Yugengaisha was listed as a co-applicant on Yamamoto's Neways distributor

application.

Yamamoto, Egashira and Matsumoto (sometimes collectively referred to as the

"International Distributors") each signed, either personally or through an authorized agent, a

distributor agreement with Neways.  Yamamoto became a Neways distributor in November of 1996 and worked as a Neways distributor until approximately March of 2007 when Neways suspended his Neways distributorship.  Egashira and Matsumoto became Neways distributors in August of 1997 and worked as Neways distributors until approximately May of 2007 when Neways suspended their distributorships.  The International Distributors became Neways distributors prior to the time that Neways had a corporate office or ground operations established in Japan.  Accordingly, they participated in Neways' Not For Resale program, ordered products directly from Neways' Utah office, and were considered by Neways to be international distributors.

During the time in which they were distributors for Neways, Yamamoto, Egashira and Matsumoto each obtained the rank of Crown Diamond, which is Neways' highest distributor rank.  As Neways distributors, the International Distributors each received monthly bonus and commission payments from Neways.  Overall, Yamamoto earned approximately $5.7 million from Neways, Egashira earned approximately $4.7 million from Neways, and Matsumoto earned approximately $5 million from Neways.

Kitagawa and Hayashi (sometimes collectively referred to as the "Japanese Distributors") were also Neways distributors.  Kitagawa signed a distributor agreement with Neways in September of 2000.  Hayashi authorized Kitiagawa to submit a distributor agreement to Neways on his behalf in April of 2004.  Unlike the International Distributors, Kitagawa and Hayashi became Neways distributors after Neways had offices and other ground operations in Japan.  Accordingly, Kitagawa and Hayashi were considered by Neways to be Japanese distributors.  During the time in which they worked as Neways distributors, Kitagawa earned approximately

$32,000 from Neways and Hayashi earned approximately $723.

After the sale of Neways, each of the Distributor Defendants became Sisel distributors. Yamamoto, Egashira and Matsumoto each signed distributor agreements with Sisel in approximately March of 2007.  Yamamoto, Egashira and Matsumoto are founding distributors for Sisel.  While neither Kitagawa nor Hayashi have personally registered as Sisel distributors, Power Mission, a company registered, owned and directed by Kitagawa, registered as a Sisel distributor in March of 2007.  Although Hayashi does not own any interest in Power Mission, he has been working with Kitagawa to establish and promote Power Mission's Sisel distributorship.

In the matter presently before the court, Neways generally alleges that the Distributor Defendants and Sisel have improperly used confidential, proprietary or trade secret information belonging to Neways to build Sisel's business and to recruit Neways distributors to join Sisel. Neways also claims that the Distributor Defendants have breached their contracts with Neways by recruiting and soliciting Neways distributors to enroll as Sisel distributors.

By way of relief, Neway seeks an order from the court enjoining Sisel and the Distributor Defendants from using, reproducing or disclosing any Neways confidential or trade secret information.  For purposes of the motion currently before the court, Neways claims that its allegedly confidential or trade secret information includes any information, whether in written form or memorized, relating to the names, contact information, sales volume or relative success of any present or former Neways distributors.  Neways also asks that the court order Sisel and the Distributor Defendants to search their records for this type of trade secret information and to promptly return such information to Neways.  Neways further seeks an order restraining Sisel and the Distributor Defendants from recruiting or soliciting Neways distributors to enroll as

distributors with Sisel.  Apparently, Neways' position is that the restraint on recruiting Neways distributors should apply to Sisel indefinitely and should apply to the Distributor Defendants for a period of one year from the date of the court's order.  Finally, Neways asks the court to order the Distributor Defendants, and Sisel in particular, to provide a copy of the court's order, along with a Japanese translation, to all Sisel distributors.

At this stage, Neways seeks only to enjoin Sisel's and the Distributor Defendants' future conduct, and the issue of what relief Neways may be entitled to in relation to either Sisel's or the Distributor Defendants' past conduct is not presently before the court.  In addition, no other issues having been raised by either Neways or the defendants during the extended preliminary injunction hearing, this order is concerned only with those issues directly raised by Neways' motion for preliminary injunction and that were addressed and argued by the parties during the hearing.

## II.    Preliminary Injunction

Two main issues are currently before the court:  First, whether Neways is entitled to an order requiring Sisel and the Distributor Defendants to return to Neways any information in their possession relating to the names, contact information, sales volume or relative success of any current or former Neways distributor and enjoining Sisel and the Distributor Defendants from using any such information in connection with Sisel's business; Second, whether Neways is entitled to an injunction enjoining Sisel and the Distributor Defendants from recruiting Neways distributors (other than the Distributor Defendants' Neways frontline members or immediate family members) to join Sisel.

To obtain injunctive relief, Neways must show that: (1) it has a substantial likelihood of

success on the merits of the case; (2) it will suffer irreparable harm without the injunction; (3) its threatened injury outweighs the harm that the injunction will cause to the Distributor Defendants and Sisel; and (4) the injunction is not against the public interest. *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1255 (10th Cir. 2003). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Id.* at 1256.

### A.     Substantial Likelihood Of Success On The Merits

#### 1.     Confidential Trade Secret Information

Neways alleges that while working as Neways distributors, the Distributor Defendants received confidential trade secret information belonging to Neways, such as information regarding the names, contact information, sales volume and relative success of other Neways distributors.  Specifically, Neways claims that downline reports, bonus recap reports, business cards and contact information that the Distributor Defendants would not have received but for their involvement with Neways constitute confidential trade secret distributor information. Neways also alleges that Sisel possesses confidential trade secret information belonging to Neways.  According to Neways, Sisel has obtained downline reports and bonus recap reports from Neways distributors that have enrolled as Sisel distributors through Sisel's rank portability campaign.  Neways argues that the Distributor Defendants and Sisel should be enjoined from using this information relating to Neways' distributors in connection with Sisel's business and should be ordered to return such information, if any, to Neways.

As the bases for the relief it seeks, Neways argues that Sisel and the Distributor Defendants have misappropriated Neways' trade secret information and have interfered with Neway's economic relations by using and disclosing such information for the purpose of injuring

Neways, including by using such information to recruit Neways distributors to enroll as Sisel distributors.  Neways also alleges that the Distributor Defendants have breached their contracts with Neways by using Neways' trade secret information in connection with their work as independent contractor distributors for Sisel.

The Distributor Defendants and Sisel deny that bonus recap reports, downline reports or business cards constitute confidential trade secret information.  They also deny that they have used such information as Sisel distributors or in connection with Sisel's business.  However, during the hearing, counsel for the defendants represented to the court the neither Sisel nor the Distributor Defendants have any need for the types of information that Neways is claiming to be confidential or trade secret distributor information.  Counsel for the defendants further represented that Sisel and the Distributor Defendants agreed to search their records for any such information and to return such information to Neways.

Accordingly, the court concludes that an order requiring Sisel and the Distributor Defendants to thoroughly search their records for any documents or information currently in their possession relating to the names, contact information, sales volume or relative success of any present or former Neways distributors and to return such information to Neways is appropriate.  Sisel and the Distributor Defendants shall not retain any copies or reproductions in any form of such documents or information.  Any such information currently in the Distributor Defendants' and Sisel's possession shall not be used in the future in connection with Sisel's business.  In addition, in the future, Sisel shall not use any Neways' downline reports, bonus recap reports, or other similar types of Neways information in connection with its business, until further order of the court.

In light of Sisel's and the Distributor Defendants' agreement regarding the types of information that Neways claims to be confidential trade secret distributor information, the court concludes that Neways will likely receive the relief that it seeks and the court need not make any specific findings at this point regarding the likelihood of Neways' success on the merits of its specific claims as to that issue.

### 2.   Recruiting

#### a.   Distributor Defendants

Neways acknowledges that the Distributor Defendants were independent contractors who were entitled to terminate their distributor agreements with Neways at will and to join another multi-level marketing company, even one that directly competes with Neways, such as Sisel. Neways also recognizes that the Distributor Defendants were entitled to recruit their immediate family members, as well as those distributors whom they had personally sponsored into Neways (otherwise referred to as their Neways frontline), to participate in another multi-level company. But Neways claims that the Distributor Defendants have breached, and are continuing to breach, their distributor contracts with Neways by recruiting Neways distributors (who are not their immediate family members and who were not in their Neways frontlines) to enroll with Sisel. Neways seeks to enjoin the Distributor Defendants from recruiting or soliciting such Neways distributors to participate with Sisel.

The Distributor Defendants deny that they have breached their contracts with Neways or that they have improperly recruited Neways distributors to join Sisel.

Because the contract terms that apply to the International Distributors are different from the contract terms that apply to the Japanese Distributors, the court will separately consider

9

Neways' breach of contract claims against the different types of distributors.

### i.        International Distributors

There is no dispute that Yamamoto, Egashira and Matsumoto each entered into a contract with Neways.  The International Distributors admit that they signed distributor agreements with Neways, either personally or through an authorized agent, and that they received benefits from their agreements with Neways during the time in which they acted as Neways distributors.

Neways claims that because the distributor agreements signed by or on behalf of the International Distributors incorporated Neways' International Statement of Policies and Procedures ("Policies and Procedures"), the distributors are bound by the nonsolicitation prohibitions set forth in the Policies and Procedures.  The International Distributors acknowledge that they are bound by the terms set forth in their distributor agreements.  They argue, however, that because Neways did not provide them with the Policies and Procedures, they had no notice of the nonsolicition prohibitions contained therein and should not be bound by such prohibitions.


Each of the distributor agreements signed by or on behalf of the International Distributors provided that "NEWAYS, INC. shall provide Policies and Procedures, . . . which are incorporated by this reference as though fully set forth herein."  The distributor agreements also provided that "[t]he Distributor is responsible to review and follow all Policies and Procedures." The distributor agreements further put the International Distributors on notice that over time, Neways could and would modify the Policies and Procedures.  Such modifications were to become a binding part of the parties' agreement upon mere "publication," in the case of Egashira's and Matsumoto's agreements, or upon "publication in the monthly Company

newsletter," in the case of Yamamoto's agreement.  By entering into their agreements with

Neways, the International Distributors certified that they had carefully read the agreement and

accepted the terms and conditions set forth therein, including those terms that were incorporated

by reference.  As pointed out above, a Neways distributor had the power to terminate at will.

During the hearing, the following evidence was presented regarding what Neways did to

provide its distributors – including the International Distributors – access to the Policies and

Procedures.  Christopher Crump testified that in 2004, when the Policies and Procedures were

last amended, Neways published the amended policies and procedures and notified its

distributors of such amendments in its company magazine entitled *Prime Time*.  Egashira and

Matsumoto both testified that while they were Neways distributors, they received *Prime Time*

magazine from Neways.  Crump also testified that editions of Neways' *Prime Time* magazine are

also available, at no charge, on Neways' Website.  In addition, Crump testified that since 2000

(and during all times relevant to Neways' breach of contract claims), the International Policies

and Procedures could be accessed on Neways' Website free of charge.  Crump also testified that

the Policies and Procedures were discussed with Neways distributors from time to time through

Neways publications and during various Neways meetings, such as business schools and training

sessions.[2]

During the hearing, evidence was also presented to show that the International

Distributors did nothing to fulfill their obligation to review the Policies and Procedures.  The

---

[2]Neways also presented evidence in an effort to show that the International Distributors received copies of a prior version of the Policies and Procedures (as amended in 1999) when they attended the 1999 Neways convention in Atlanta, Georgia.  Because Neways' breach of contract claims against the International Distributors in this action are based on the current version of the Policies and Procedures, as amended in 2004, the court is more concerned about evidence establishing that Neways provided the 2004 version of the policies to the distributors.

International Distributors all testified that they had never received the Policies and Procedures, and that therefore they had never read such policies and procedures.  They also testified, however, that during the approximately ten years in which they worked as Neways distributors, they never read, nor made any attempt to understand, the terms of their distributor agreements with Neways.  There was no evidence presented showing that the International Distributors had ever notified Neways that they had not received the Policies and Procedures, asked Neways for a copy of the Policies and Procedures, or requested a Japanese translation of the Policies and Procedures.

Although the International Distributors claim to have not received or read the Policies and Procedures, they all indicated that they had some knowledge of the Policies and Procedures or of the cross-recruiting prohibitions contained therein.  For example, Matsumoto testified that she understood that Neways had policies and procedures governing the conduct of its distributors and that she thought her contract with Neways incorporated such policies and procedures. Yamamoto and Egashira both testified that they were aware, at least to some extent, that Neways prohibited cross-recruiting and that they were prohibited from inviting Neways distributors who were not members of their Neways frontline to go work for another multi-level marketing company.

Having considered the evidence presented at the hearing, the court is satisfied that at this point, Neways has made a sufficient showing that the Policies and Procedures were available to the International Distributors.  Any lack of notice seems to have been caused by the distributors' indifference to the terms of both their distributor agreements and the Policies and Procedures. Having held themselves out as Neways distributors and having accepted bonus and commission

payments from Neways for approximately ten years, and in the absence of any indication that they attempted to obtain the Policies and Procedures or that Neways denied them access to the Policies and Procedures, the court determines that Neways has shown that the International Distributors are likely bound by the Policies and Procedures as most recently amended in 2004 and that such are part of their respective distributor contracts.

The current version of the Policies and Procedures provides that "[d]uring the term of this Agreement, Distributors shall not recruit other Neways Distributors or Customers for any other network marketing business."  (Pl.'s Ex. 20, at 12 ¶ 4.9.1.)  The Policies and Procedures further provide that

> [f]or one year following the termination or cancellation of a Distributor's Neways Distributor Agreement, regardless of the reason for termination or cancellation, he or she shall not recruit any Neways Distributor who is on his/her current or past genealogy report(s) or with whom the Distributor became acquainted by virtue of their mutual participation as Neways Distributors.

(Pl.'s Ex. 20, at 13 ¶ 4.9.1.2.)  The distributor, however, is not prohibited from recruiting his or her "personally enrolled downline Distributors and immediate family members (parents, siblings, and children over the age of 18)."  (Pl.'s Ex. 20, at 13 ¶ 4.9.1.3.)  The Policies and Procedures define the term "recruit" as meaning:

> actual or attempted solicitation, enrollment, encouragement, or effort to influence in any other way, either directly, through a third party, or indirectly (including but not limited to, the use of a website), another Neways Distributor or customer to enroll or participate in another network marketing opportunity. This conduct constitutes recruiting even if the Distributor's actions are in response to an inquiry made by another Distributor or Customer.

(Pl.'s Ex. 20, at 13 ¶ 4.9.1.4.)

The International Distributors' own testimony provides material support for Neways'

claim that they were "recruit[ing]," as that term in defined in the Policies and Procedures, other Neways distributors to participate in Sisel both during and after the time in which they were Neways distributors themselves.

Each of the International Distributors testified that while they were Neways distributors, they spoke to and met with several other Neways distributors about Sisel.  For example, Yamamoto testified that he provided information about Sisel to several Neways distributors who were neither in his Neways frontline nor his immediate family members beginning in as early as July of 2006.  Some of the Neways distributors that Yamamoto spoke to or met with regarding Sisel were encouraged to join Sisel and are now members of Yamamoto's downline at Sisel.

Yamamoto, along with several other Neways distributors, also attended an event in December of 2006, which some of the witnesses referred to as the Sisel "founder's meeting." During the founder's meeting, and in the presence of a number of distributors from his Neways downline, Yamamoto was presented with a copper plate that indicated that if he so desired, he would be given the title of Sisel's number one distributor.  Although Yamamoto testified that he had not yet decided whether he was going to join Sisel, the evidence established that a number of Neways distributors who attended the Sisel founder's meeting were influenced to enroll as Sisel distributors.  For instance, five members of Matsumoto's Neways downline who attended the founder's meeting (after receiving information about the meeting from Matsumoto), have enrolled as distributors for Sisel and are now in Matsumoto's Sisel downline.

Egashira and Matsumoto also testified that beginning in or around January of 2007, they organized and participated in a series of meetings held at Egashira's house in Nobeyama for the purpose of providing Neways distributors with information about Sisel.  During the meetings,

Sisel's products and compensation plan were discussed and a video from Thomas Mower regarding Sisel was presented. Egashira and Matsumoto believed that the approximately twenty to thirty people who attended these meetings were all Neways distributors. Egashira and Matsumoto also testified that they had spoken with a number of Neways distributors who were in their Neways downlines (but not frontlines) about Sisel and that they personally sponsored distributors from their Neways downlines (but not frontlines) into Sisel.

Significantly, each of the International Distributors testified that a substantial number of the distributors that they had personally sponsored into Sisel were current or former Neways distributors. Specifically, all ten of the distributors in Egashira's Sisel frontline are current or former Neways distributors, almost all of the twenty distributors in Matsumoto's frontline are either current or former Neways distributors, and at least fifteen out of the approximately thirty-five or thirty-six distributors in Yamamoto's Sisel frontline are former Neways distributors. Egashira also testified that he had a "vague impression" that approximately seventy percent of the distributors in his Sisel downline were current or former Neways distributors.

Currently, as Sisel distributors, the International Distributors give speeches at seminars organized and arranged by other Sisel distributors. The International Distributors attend such seminars and speak about various aspects of Sisel, including Sisel's mission and Sisel's products. It appears to the court that the purpose of these seminars is, at least in part, to provide interested people with information about Sisel and to encourage people to enroll as Sisel distributors. Anywhere from about ten to three hundred people may be in attendance at one of these seminars. During the hearing, counsel for the International Distributors acknowledged that Neways distributors could be in attendance at these seminars and that it was conceivable that

15

people who attend these seminars might feel as though they were being recruited, encouraged, solicited or invited to join Sisel.

While there was other material evidence presented during the hearing regarding the International Distributors' recruiting activities, the court concludes that based on the International Distributors' testimony alone, Neways is likely to establish that the International Distributors have "recruit[ed]" and continue to "recruit" Neways distributors, as that term is defined in the Policies and Procedures, and is likely to prevail on its breach of contract claims for recruiting against the International Distributors.  Accordingly, Neways is entitled to an injunction restraining the International Distributors from either directly or indirectly soliciting, enrolling, encouraging or attempting to influence any current Neways distributor to enroll or participate in Sisel.  The International Distributors are also enjoined from responding to any inquiry made by any Neways distributor regarding Sisel.[3]  These restraints do not apply to the International Distributors' contact and communication with Neways distributors who are members of their immediate family or who were members of their Neways frontlines.

The Policies and Procedures limit Neways' entitlement to such restraints to a period of "one year following the termination or cancellation of a Distributor's Neways Distributor Agreement, regardless of the reason for termination or cancellation . . . ."  (Pl.'s Ex. 20, at 13 ¶ 4.9.1.2.)  During the hearing, it was established that Neways "suspended" Yamamoto's Neways distributorship on or around March 9, 2007.  Neways also "suspended" Egashira's and

---

[3]The court acknowledges the broad scope of the Policies and Procedures' definition of "recruit."  But given the particular facts of this case, the definition of "recruit" in Sisel's Policies and Procedures (which is materially the same as the definition of "recruit" included in Neways' Policies and Procedures), and the testimony of Richard Maike that the cross-recruiting prohibitions contained in the Neways Policies and Procedures are consistent with the custom and practice in the multi-level marketing industry, the court concludes that the Policies and Procedures' definition of "recruit" is not unreasonably overbroad.

16

Matsumoto's Neways distributorships on or around May 18, 2007.  According to Neways, when

a Neways distributor is suspended, the obligations between Neways and the distributor are

suspended.  As a result of their suspensions, the International Distributors stopped receiving

payments from Neways and were prohibited from ordering Neways products and making sales

on behalf of Neways.  Because the International Distributors had no rights or benefits under their

respective distributor agreements at the time of their suspensions, the court determines that their

suspensions were tantamount to "termination or cancellation" of their distributor agreements.

Accordingly, the restraints regarding Yamamoto's recruitment of Neways distributors would be

in effect until March 9, 2008, and the restraint regarding Egashira's and Matsumoto's

recruitment of Neways distributors would be in effect until May 18, 2008.

### ii.    Japanese Distributors

Unlike the International Distributors, Kitagawa and Hayashi were not bound by the

Policies and Procedures.  Instead, the distributor agreement signed by the Japanese Distributors

incorporated the Neways Distributor Policy Wisdom (the "Wisdom Manual") as an integral part

of the agreement.

The Wisdom Manual provides the following with respect to cross-recruiting:

A Neways distributor shall not use any Neways assets, marketing, meetings,
information, products, or anything else associated with Neways to promote
another company or its marketing program, opportunities, products, or services.
Distributors further shall not cross-recruit, directly or indirectly, in person or
by agent, any distributor in their downline or upline (or in the downline or
upline of another Neways distributor) for another company in the same
industry (headhunting).  Distributors are also prohibited from encouraging
the suspension of other Neways distributor activities.

(Pl.'s Ex. 3, at § (II) 4(1).)

The Japanese Distributors argue that while they may have been restrained by this

17

provision during the time in which they were Neways distributors, there is no provision in the Wisdom Manual indicating that this restraint survives termination of the agreement. The Japanese Distributors further argue that even if the cross-recruiting provision survived termination of the agreement, there is no provision specifying the length of time during which the restraint would be in place.

The court determines that in this instance, it is unclear whether the cross-recruiting limitation survives termination of the distributorship agreement and if so, what length of time the restraint would be in effect. Thus, as applied to Kitagawa and Hayashi, the limitations regarding cross-recruiting are ambiguous and subject to more than one interpretation. Construing this ambiguity against Neways, the drafter of the agreement, the court determines that at this point, Neways has failed to show that the Wisdom Manual's prohibition regarding cross-recruiting continued beyond the time that Kitagawa's and Hayashi's Neways distributorships were cancelled or terminated.

The Japanese Distributors' Neways distributorships have either been cancelled or terminated. Kitagawa provided Neways with a written request for cancellation of her Neways distributorship on November 28, 2007. Hayashi testified that the last time that he purchased products from Neways was in the Spring of 2006. The Wisdom Manual provides that "[a]n inactive distributor who has not made a purchase for 12 months will at that point in time be stripped of distributorship, and the enrollment information of the distributor will be deleted from company records." (Pl.'s Ex. 3, at § (VI) 3.) Based on this clear language and the evidence currently before the court, the court concludes that Hayashi's Neways distributorship was terminated sometime in the Spring of 2007, and no later than the end of June of 2007. The

18

court's conclusion regarding the status of Hayashi's Neways distributorship is supported by Neways' position that it did not send Hayashi a suspension letter after hearing reports of alleged cross-recruiting in early 2007 because at that time, Hayashi had been inactive in Neways' system for over twelve months.

Having considered the applicable provisions in the Wisdom Manual and the specific evidence presented during the hearing, the court determines that at this point, while an order requiring the Japanese Distributors to return all Neways distributor information in their possession is appropriate (as discussed above), there is no basis for otherwise restraining Kitagawa's or Hayashi's recruiting activities at this time.  Whether or not Kitagawa's or Hayashi's past conduct constituted a breach of their contractual obligations with Neways is not presently before the court.

In reaching its conclusion, the court has not considered the terms contained in Form #9074 – Non-Disclosure, Non-Circumvention, and Non-Competition Agreement, which is attached to the Wisdom Manual that was admitted in evidence.  During the hearing, there was no evidence that either Kitagawa or Hayashi signed that form or agreed to be bound by its terms.  Without such evidence, the court will not interpret the form's limitations or determine that such limitations are binding on the Japanese Distributors.

> **b.     Sisel**

Neways also seeks an order restraining Sisel from recruiting or soliciting Neways distributors.

The court concludes that while an order requiring Sisel to return all Neways distributor information in its possession and restraining Sisel from using such information in connection

with its business is appropriate (as discussed above), there is insufficient basis at this time to justify an order otherwise restraining Sisel's recruiting activities through persons other than through the International Distributors.

### B.     Irreparable Harm

Multi-level marketing companies such as Neways and Sisel conduct virtually all of their business through their distributor networks.  As Sisel acknowledges, a multi-level marketing company's relationship with its distributors is crucial to the success of the company's marketing program.  Accordingly, distributor networks are extremely important assets to multi-level marketing businesses.

Neways claims that a significant number of its established distributors have already been recruited to join Sisel as a result of improper recruiting activities that have involved the disavowal of contractual obligations and the use of confidential trade secret distributor information belonging to Neways.  Neways claims that in the absence of an injunction, its distributor network will continue to be improperly recruited to join Sisel.

A finding of irreparable harm may be based on factors such as the "difficulty in calculating damages . . . and [the] existence of intangible harms such as loss of goodwill or competitive market position."  *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004).  The court is satisfied that Neways has established that in the absence of injunctive relief, it may continue to lose key members of its distributor network and that such loss will adversely impact Neways' competitive market position and cause other harm that is not solely compensable by monetary damages.  Accordingly, the court concludes that the irreparable harm element tips in favor of Neways.

### C.   Balance Of Harms

The court also concludes that the harm that Neways will likely suffer if the injunction is not issued outweighs the harm that Sisel and the Distributor Defendants will suffer if the injunction is issued.

The potential harm caused to Neways if the injunction is not issued is discussed above.

On the other hand, it appears to the court that the defendants will suffer little harm if the injunction is issued.  Sisel and the Japanese Distributors will be free to continue to market Sisel's products, mission and compensation plan.  The International Distributors are also free to market Sisel except for that during a limited period of time, such marketing may not be directed at current Neways distributors unless such distributors were members of the International Distributors' Neways frontlines or are immediate family members.  At most, the International Distributors will be required to fulfill their freely contracted obligations to Neways.

With respect to the portion of the injunction seeking the return of information that Neways claims contains trade secret distributor information, it seems clear that the Distributor Defendants and Sisel will suffer no harm.  During the hearing, Sisel and the Distributor Defendants indicated that the alleged trade secret distributor information belonging to Neways has not been used, and is of no use to them, with respect to Sisel's business.  Sisel and the Distributor Defendants voluntarily agreed to locate all such information in their possession and to return it to Neways.

### D.   Public Interest

The Distributor Defendants and Sisel argue that the injunction sought by Neways would be contrary to the public interest because it would stifle competition.  The defendants argue that

potential distributors and customers ought to be free to receive information regarding Sisel and that an injunction would have a chilling effect on the availability of such information.

The court recognizes that the public has a strong interest in a competitive marketplace. However, as discussed above, the injunction sought by Neways would not bar Sisel from fairly competing.  Instead, the injunction seeks only to prevent the disavowal of existing contractual duties and to prohibit unfair competition.  Because the public has an interest in fair competition and in the enforcement of lawful contractual obligations, the court determines that the public interest favors issuing the injunction as against the International Distributors.

For the reasons set forth above,

**IT IS ORDERED** that Sisel and the Distributor Defendants shall thoroughly search their records, including their computer files, for any documents or information relating to the names, contact information, sales volume or relative success of any present or former Neways distributors and shall return such documents or information to Neways within twenty days from the date of this order.  Sisel and the Distributor Defendants shall not retain any copies or reproductions in any form of such documents or information.  The Distributor Defendants and Sisel are enjoined from using such information in the future in connection with Sisel's business. And in the future, and until further order of the court, Sisel is enjoined from using Neways' downline reports, bonus recap reports or other similar types of Neways distributor information in connection with its business.

**IT IS FURTHER ORDERED** that the International Distributors are enjoined from recruiting any present Neways distributor to enroll as a Sisel distributor.  Recruiting includes either directly or indirectly soliciting, enrolling, encouraging or attempting to influence any

current Neways distributor to enroll in or participate with Sisel.  Recruiting also includes

responding to any inquiry made by any Neways distributor regarding Sisel.  These restraints do

not apply to the International Distributors' contact and communication with Neways distributors

who are members of their immediate family or who were members of their Neways frontlines.

This prohibition on recruiting shall expire on March 9, 2008, with respect to Yamamoto, and on

May 18, 2008, with respect to Egashira and Matsumoto.

**IT IS FURTHER ORDERED** that due the limited nature of the relief granted, Neways

need not post a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

While the court in no way restricts the widespread distribution of this order, the court

elects not to order either party to make such a distribution.

DATED this _____ day of February, 2008.

BY THE COURT:

_____
Bruce S. Jenkins
United States Senior District Judge

current Neways distributor to enroll in or participate with Sisel. Recruiting also includes responding to any inquiry made by any Neways distributor regarding Sisel. These restraints do not apply to the International Distributors' contact and communication with Neways distributors who are members of their immediate family or who were members of their Neways frontlines. This prohibition on recruiting shall expire on March 9, 2008, with respect to Yamamoto, and on May 18, 2008, with respect to Egashira and Matsumoto.

**IT IS FURTHER ORDERED** that due the limited nature of the relief granted, Neways need not post a bond pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

While the court in no way restricts the widespread distribution of this order, the court elects not to order either party to make such a distribution.

DATED this _11th_ day of February, 2008.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

23